# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kimberly K. Muschong

FROWNFELTER v ESURANCE PROPERTY & CASUALTY INSURANCE COMPANY

Docket Nos. 168356 and 168357. Argued on application for leave to appeal April 9, 2026. Decided July 22, 2026.

Plaintiff, McKenna Frownfelter, brought an action against Esurance Property and Casualty Insurance Company in the Oakland Circuit Court under the no-fault act, MCL 500.3101 *et seq*., seeking personal protection insurance (PIP) benefits after she was injured in a car crash as a passenger in a vehicle owned by her father, Corey Frownfelter (Frownfelter). Esurance, Frownfelter's insurer, filed a third-party complaint against Frownfelter's other insurers, Progressive Michigan Insurance Company and Farmers Insurance Company, and against Auto-Owners Insurance Company, which insured plaintiff's mother, Stephanie Lawrence, contending that they were higher priority insurers and that it was entitled to reimbursement. Plaintiff also filed complaints against Progressive, Farmers, and Auto-Owners seeking outstanding PIP benefits. Esurance moved for summary disposition of plaintiff's case under MCR 2.116(C)(10), arguing that plaintiff was domiciled with her mother at the time of the accident because she spent 75% of her time there, making Lawrence's insurance provider, Auto-Owners, the highest priority insurer under MCL 500.3114(1). Auto-Owners countered that because the parents' 2011 divorce judgment provided for a 50/50 joint custody split and plaintiff was staying at Frownfelter's home at the time of the crash, plaintiff was domiciled with Frownfelter under *Grange Ins Co of Mich v Lawrence*, 494 Mich 475 (2013), which held that when a family court has entered an order relating to custody, the child's domicile is established by operation of law for all purposes, including the no-fault act. *Grange* also noted that if a custody order granted the parents an equal division of physical custody, the child's domicile would be the same as that of the parent with whom the child is living at the time.

The trial court, Kwamé L. Rowe, J., entered an order denying Esurance's motion for summary disposition and granting Auto-Owners' request for judgment pursuant to MCR 2.116(I)(2). The remaining parties to the first-party complaint entered into a stipulated judgment that preserved plaintiff's ability to appeal the trial court's ruling on Esurance's motion for summary disposition. In the meantime, plaintiff filed a tort action seeking noneconomic damages pursuant to MCL 500.3135(3)(b) from Frownfelter, as the owner of the involved vehicle, and requesting a declaratory judgment that the "step-down" provision in the Esurance policy, which lowered bodily injury liability coverage from $250,000 to $20,000 for residents of Frownfelter's household, did not apply. Plaintiff also moved for summary disposition as to the

amount of bodily injury liability coverage Esurance was to provide to Frownfelter, arguing that because she was not a "resident" of his home at the time of the accident, Frownfelter was entitled to $250,000. Following oral arguments, the trial court denied plaintiff's motion on the ground that she was a resident of Frownfelter's home at the time of the accident, and it also denied plaintiff's motion for reconsideration. The parties then entered into a stipulated judgment for $250,000, which preserved plaintiff's right to appeal the trial court's orders denying her motions for summary disposition and for reconsideration.

Plaintiff appealed by right, challenging the trial court's decisions denying Esurance's motion for summary disposition against Auto-Owners, denying her motion for summary disposition against Esurance, and denying her motion for reconsideration. The Court of Appeals, FEENEY, J. (LETICA, P.J., concurring, and GARRETT, J., concurring in part and dissenting in part), affirmed in an unpublished per curiam opinion issued February 24, 2025 (Docket Nos. 366118 and 366120), holding that plaintiff was domiciled with Frownfelter at the time of the accident pursuant to the divorce judgment and *Grange* and that she was a "resident" of Frownfelter's home for purposes of the step-down provision in his Esurance policy. Plaintiff sought leave to appeal in the Supreme Court, which ordered and heard oral argument on the application. ___ Mich ___; 25 NW3d 671 (2025).

In an opinion by Justice ZAHRA, joined by Chief Justice CAVANAGH and Justices BERNSTEIN, WELCH, BOLDEN, and HOOD, in lieu of granting leave to appeal, the Supreme Court *held*:

A custody order does not determine a child's domicile for purposes of the no-fault act. The domicile rule set forth in *Grange* is overruled. While a custody order serves as a starting point in ascertaining a child's domicile, where the facts of the child's living arrangements are clearly inconsistent with the family court's orders, those orders should not be considered representative of the child's domicile. Instead, courts should look to the traditional factors for determining domicile for purposes of no-fault insurance articulated in *Workman v Detroit Auto Inter-Ins Exch*, 404 Mich 477 (1979), and *Dairyland Ins Co v Auto-Owners Ins Co*, 123 Mich App 675 (1983). When the child's parents share joint custody, courts should also consider where the child actually spends the majority of their time and where the child actually sleeps most nights of the week. These factors are not exhaustive, and no one factor is dispositive. The Court of Appeals judgment was vacated with respect to both the holding that plaintiff was domiciled with Frownfelter at the time of the accident and the holding that plaintiff was a resident of Frownfelter's home at that time for purposes of the step-down provision in his Esurance policy, and the case was remanded to the trial court for further proceedings.

1. Determining a person's domicile is necessary to ascertain which insurer is liable to pay PIP benefits under MCL 500.3114(1), which limits PIP coverage for relatives of policyholders to those who are domiciled in the same household. The no-fault act does not define the term "domiciled," but it has acquired a precise, technical meaning in Michigan's common law. Domicile determinations for purposes of assessing insurer liability in the no-fault context are generally made by considering the factual circumstances surrounding the party's living situation and by balancing and weighing several factors, none of which is determinative on its own. A nonexhaustive list of such factors was provided in *Workman*: (1) the subjective or declared intent

of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place they contend is their "domicile" or "household," (2) the formality or informality of the relationship between the person and the members of the household, (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises, and (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household. Additional relevant factors were set forth in *Dairyland* for determining whether a child of majority age is domiciled with their parents: (1) whether the child continues to use their parents' home as their mailing address, (2) whether they maintain some possessions with their parents, (3) whether they use their parents' address on their driver's license or other documents, (4) whether a room is maintained for them at the parents' home, and (5) whether they are dependent on the parents for support.

2. In *Grange*, the Court considered whether a child of divorced parents who has a legal residence in both parents' homes can be domiciled in more than one household for purposes of MCL 500.3114(1). The *Grange* Court correctly held that a child of divorced parents has only one domicile at any given point in time. However, the *Grange* majority went on to hold that courts presiding over no-fault disputes must treat a custody order as conclusive evidence of the child's domicile. *Grange* also noted that if a custody order were to grant an equal division of physical custody, the child's domicile would alternate between the parents so as to be the same as that of the parent with whom they are living at the time. The underpinning of the *Grange* majority decision—that a custody order is capable of definitively establishing a child's domicile by operation of law—is legally unsupported and creates the very type of "dual domicile" that the *Grange* majority itself rejected.

Physical custody orders under the Child Custody Act, which are governed by a court's determination of the child's best interests, are not equivalent to domicile determinations, which focus on where a person has fixed their abode, and a family court does not have the authority under the Child Custody Act to set a child's domicile by order. Further, the *Grange* rule is not easily applied to custody orders that are not clearly drafted, that provide discretion to the parties as to how to structure their parenting time, or that grant each parent joint physical custody under MCL 722.26a(7), and it disregards the practical reality that circumstances might change for divorced parents and their children over time as a matter of amicable agreement without an updated court order. The rule also unduly impinges on the ability of an insurer to accurately assess its risks when entering into insurance agreements by placing PIP liability on the insurer of the parent who has been ordered to have physical custody, even when the child is not primarily living with that parent. The rule is also inconsistent with the no-fault act, which provides PIP protection for accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household. For these reasons, *Grange* was incorrectly decided. Because the *Grange* domicile rule was only superficially workable, was unlikely to be relied on, would result in serious detriment prejudicial to public interests, and constituted a departure from the traditional common-law approach to ascertaining domicile, it was overruled.

3. Determining the domicile of a child with two legal residences for purposes of the no-fault act requires a review of all the facts and circumstances to ascertain whether the evidence that the child is domiciled in one legal residence outweighs the evidence that the child is domiciled in another legal residence. This inquiry necessarily involves some consideration of the family court's

orders relating to the custody of a child and a child's legal residence, which can serve as the starting point for determining a child's domicile. But because custody arrangements between parties often informally change without court awareness or recognition, an initial custody order might not accurately reflect the child's present living situation. Consequently, courts should also consider the nonexhaustive factors articulated in *Workman* and *Dairyland*, where the child spends the majority of their time and sleeps most nights of the week, and other relevant considerations within the fact-finder's discretion.

Court of Appeals judgment vacated in part; case remanded to the trial court for further proceedings.

Justice THOMAS, concurring, agreed with the majority's resolution of the case, its reasoning in critiquing the ruling in *Grange*, and its holding that a divorce judgment or other custody orders are only a starting point in determining a minor child's domicile for purposes of no-fault insurance, though she would have preferred to decide the case more narrowly and leave the question of whether to overrule *Grange* until it was necessary. She wrote separately primarily to highlight the implications of this case for family courts, which are not tasked with making domicile determinations and do not write their orders with future no-fault implications in mind. She noted that choices made in the family court during or after a divorce involving minor children may have a significant impact years later in a completely different area of law for the litigants, who are focused on the many required aspects of a legal divorce and often lack the guidance of counsel. She concluded that the decision in this case, which provides a consistent determination regarding domicile across all cases, helps mitigate, but does not eliminate, that impact.

# OPINION

Chief Justice:
  Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED July 22, 2026

STATE OF MICHIGAN

SUPREME COURT

MCKENNA FROWNFELTER,

    Plaintiff-Appellant,

v

No. 168356

ESURANCE PROPERTY AND
CASUALTY INSURANCE COMPANY,

        Defendant/Third-Party
        Plaintiff-Appellee,

and

PROGRESSIVE MICHIGAN INSURANCE
COMPANY, FARMERS INSURANCE
COMPANY, and AUTO-OWNERS
INSURANCE COMPANY,

        Third-Party Defendants-
        Appellees.

MCKENNA FROWNFELTER,

      Plaintiff-Appellant,

v

                                      No. 168357

COREY FROWNFELTER, AUTO-
OWNERS INSURANCE COMPANY, and
ESURANCE PROPERTY AND
CASUALTY INSURANCE COMPANY,

      Defendants-Appellees.

---

BEFORE THE ENTIRE BENCH

ZAHRA, J.

In this case brought under the no-fault act,[1] plaintiff, McKenna Frownfelter, aged 15 at the time, was severely injured in a car accident on her way to school from her father's house. Pursuant to her parents' 2011 divorce judgment, her father and mother had joint physical custody of her, and the custody order provided that she was to reside with each parent 50% of the time. In reality, however, plaintiff spent closer to 75% of her time at her mother's house and 25% of her time at her father's house. This case requires the Court to determine in which household plaintiff was domiciled at the time of her accident for purposes of MCL 500.3114, the provision of the no-fault act that governs which insurer is liable to provide personal protection insurance (PIP) benefits.

In *Grange Ins Co of Mich v Lawrence*, this Court held that, "in the event that the child's parents are divorced and a family court has entered an order relating to

---

[1] MCL 500.3101 *et seq*.

custody, . . . the child's domicile is established by operation of law" and "the custody order is thus determinative of the child's domicile for all purposes, including the no-fault act."[2] The Court noted that in cases where a custody order grants the parents an equal division of physical custody, "the child's domicile would alternate between the parents so as to be the same as that of the parent with whom he is living at the time."[3] Applying *Grange*, the trial court ruled that plaintiff was domiciled with her father, because the applicable custody order granted plaintiff's parents joint physical custody and an equal amount of parenting time, and plaintiff had stayed at her father's home the night before the accident. The trial court thus denied the motion for summary disposition filed by her father's insurer, Esurance Property and Casualty Insurance Company. The trial court also found that plaintiff was a resident of her father's household for purposes of a "step-down" provision in his insurance policy with Esurance. The Court of Appeals affirmed both rulings.

We hold that the domicile rule in *Grange* was incorrectly adopted. We reject the *Grange* majority's overly simplistic holding that a custody order is capable of dispositively setting a child's domicile by operation of law. Instead, a custody order creates the custodial environment from which domicile can be established. Custodial environment and domicile are distinct concepts, and the Child Custody Act[4] nowhere purports to establish domicile for purposes of the no-fault act. The *Grange* domicile rule unreasonably posits that every custody order functions to conclusively establish the legal domicile of a given child under

---

[2] *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 481; 835 NW2d 363 (2013).

[3] *Id*. at 513 n 78.

[4] MCL 722.21 *et seq*.

the no-fault act, regardless of any ambiguities in the custody order or practical changes to the needs and practices of the child and divorced parents that naturally develop over time. The rule also unduly impinges on the ability of an insurer to accurately assess its risks when entering into insurance agreements.

The *Grange* rule is particularly ill-suited for cases in which a custody order grants each parent joint physical custody and creates a 50/50 division of physical custody, as in the instant case. This rule "is a semantic end-run around our traditional rule that a person may only have one domicile and ignores the practical reality that in virtually all cases, a child will have a primary residence that will constitute the child's domicile."[5] We conclude that *Grange* improperly expanded the common-law doctrine of domicile by operation of law beyond its logical and practical bounds and was wrongly decided. Application of a stare decisis analysis compels us to overrule this aspect of *Grange*.

Having overruled the *Grange* domicile rule, we see no principled reason to treat the domicile determination differently in this context than in all others. The determination of the domicile of a child with two legal residences requires a review of *all* the facts and circumstances to determine whether the evidence that the child is domiciled in one legal residence outweighs the evidence that the child is domiciled in another legal residence.[6] While we disagree with the *Grange* majority that the applicable custody order is *dispositive* in ascertaining a child's domicile, a family court's custody and residence determinations serve as the starting point for determining a child's domicile because " '[a] party must obey

---

[5] *Grange*, 494 Mich at 517 (ZAHRA, J., concurring).

[6] See *In re High*, 2 Doug 515, 522-523 (Mich, 1847).

4

an order entered by a court with proper jurisdiction.' "[7] But custody arrangements between parties often informally change without court awareness or recognition. Thus, an initial custody order may not accurately reflect the present living situation of the minor child at issue. Consequently, while courts should look to the custody order when determining a child's domicile, this should not be the only consideration, as the order is not always reflective of reality.

For purposes of determining, under the no-fault act, the domicile of minor children whose parents share joint custody, where the facts demonstrate that the parties are acting consistently with the pertinent custody order, it is reasonable to conclude that the custody order is reflective of the child's domicile. But where the facts of the child's living arrangements are so clearly inconsistent with the family court's order that it is reasonable to conclude that the child's parents have reached an agreement regarding the child's domicile that differs from the domicile set forth in the custody order, the family court's order should not be considered representative of the child's domicile. In all cases, courts should make domicile determinations in light of the actual facts of the custodial situation. In making these determinations, courts should look to the traditional factors for determining domicile for purposes of no-fault insurance articulated by this Court in *Workman v Detroit Auto Inter-Ins Exch*[8] and by the Court of Appeals in *Dairyland Ins Co v Auto-Owners Ins Co*.[9] Additionally, other relevant factors that are unique to the context

---

[7] *Grange*, 494 Mich at 531 (ZAHRA, J., concurring) (citations omitted).

[8] *Workman v Detroit Auto Inter-Ins Exch*, 404 Mich 477, 496; 274 NW2d 373 (1979).

[9] *Dairyland Ins Co v Auto-Owners Ins Co*, 123 Mich App 675, 682; 333 NW2d 322 (1983).

of minor children whose parents share joint custody include (1) where the child actually spends the majority of their time and (2) where the child actually sleeps the majority of the nights of the week. None of these factors alone is dispositive, but collectively, they are compelling indicators of where a child is domiciled.

We vacate the judgment of the Court of Appeals with respect to its holding that plaintiff was domiciled with her father at the time of the subject motor vehicle accident. We also vacate the judgment of the Court of Appeals with respect to its holding that plaintiff was a resident of her father's home at the time of the accident, as the panel's residency determination flowed directly from its conclusion that plaintiff was domiciled with her father. We remand this case to the trial court for proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff's mother, Stephanie Lawrence, and father, Corey Frownfelter, divorced in 2011. Pursuant to their divorce judgment, Lawrence and Frownfelter shared joint physical custody of plaintiff and her brother Hunter. Specifically, the custody order stated "that the parties shall have parenting time with the minor children . . . at such times and places as shall be agreed upon by the parties." The order clarified: "The residence of the minor children . . . shall be with [Lawrence], at her current address . . . 50% of the time and with . . . [Frownfelter], at his current address . . . ." While this might have reflected the custody arrangement that existed in 2011, Lawrence explained in a deposition that, by the time of the accident in 2020, plaintiff spent closer to 75% of her time at her mother's house and 25% of her time at her father's house.

6

On January 7, 2020, plaintiff spent the night at her father's house. On January 8, Hunter was driving himself and plaintiff to school in Frownfelter's car when he hit a patch of ice, causing the vehicle to crash into a tree. Plaintiff suffered severe injuries and required emergency back surgery as a result. At the time, Lawrence was insured by Auto-Owners Insurance Company, and Frownfelter was insured under policies issued by Esurance, Progressive Michigan Insurance Company, and Farmers Insurance Company.

On October 16, 2020, plaintiff filed a first-party complaint against Esurance, arguing that Esurance violated the no-fault act and breached the terms of its insurance policy when it delayed payment of plaintiff's insurance benefits. Esurance then filed a third-party complaint against Progressive, Farmers, and Auto-Owners on May 26, 2021, contending that they were higher priority insurers and that it was entitled to reimbursement. Plaintiff also filed complaints against Progressive, Farmers, and Auto-Owners seeking outstanding PIP benefits.

Esurance moved for summary disposition of plaintiff's case under MCR 2.116(C)(10), arguing that plaintiff was domiciled with Lawrence at the time of the accident, making Lawrence's insurance provider, Auto-Owners, the highest in priority insurer pursuant to MCL 500.3114(1). Auto-Owners countered that the custody order provided for a 50/50 custody split and that plaintiff was domiciled with her father pursuant to this Court's decision in *Grange*. The trial court agreed with Auto-Owners and entered an order denying Esurance's motion for summary disposition and granting Auto-Owners' request for judgment pursuant to MCR 2.116(I)(2).

The remaining parties to the first-party complaint subsequently entered into a stipulated judgment in the amount of $7,292.82 in favor of plaintiff. The judgment

7

preserved plaintiff's ability to appeal the trial court's ruling on Esurance's motion for summary disposition.

In the meantime, on January 25, 2022, plaintiff filed a tort action seeking noneconomic damages pursuant to MCL 500.3135(3)(b) from Frownfelter, as the owner of the involved vehicle, for injuries sustained in the accident. The complaint included a request for a declaratory judgment that the "step-down" provision in Frownfelter's Esurance policy, which would lower bodily injury liability coverage from $250,000 to $20,000, did not apply.[10] Plaintiff moved for summary disposition as to the amount of bodily injury liability coverage Esurance was to provide to Frownfelter, arguing that she

---

[10] Frownfelter's Esurance insurance policy contained the following provision:

> To the extent that the limits of liability for this coverage exceed the "*minimum limits*" of liability required by the financial responsibility law of the state in which a "*covered auto*" is principally garaged, "*we*" do not provide Liability Coverage for any "*insured*":

> A. For "*bodily injury*" to "*you*" or any "*family member*" for any damages in excess of the "*minimum limits*".

The policy defined "family member" as: "Any person related to '*you*' by blood, marriage, or adoption who is a resident of '*your*' '*household*'[.]" Under the section titled "Driver and Resident Information," the insurance application asked Frownfelter to identify all members of his household aged 14 or older. Frownfelter identified himself and his son Hunter, but he did not identify plaintiff, even though she was 15 years old at that time.

If plaintiff was a "resident" of Frownfelter's household, then this "step-down" provision would apply and defendant Esurance was not required to provide coverage to her "for any damages in excess of the '*minimum limits*.'" The term "minimum limits" was defined to "refer[] to the minimum amounts of liability insurance required to be provided under the automobile financial responsibility and insurance laws of Michigan," which, at the time, was "$20,000.00 for [plaintiff's] bodily injury" under MCL 500.3009(1)(a). But if plaintiff was not a resident of Frownfelter's household, the policy entitled plaintiff to as much as $250,000.

8

was not a "resident" of his home at the time of the accident, and therefore, Frownfelter was entitled to be paid $250,000 per person in bodily injury liability coverage.

Following oral arguments, the trial court issued an order denying plaintiff's motion, finding that plaintiff was a "resident" of Frownfelter's home at the time of the accident, meaning that the step-down provision in the Esurance policy applied. Plaintiff filed a motion for reconsideration, which the trial court denied. The parties then entered into a stipulated judgment for $250,000, which preserved plaintiff's right to appeal the trial court's orders denying her motions for summary disposition and for reconsideration.

Plaintiff appealed by right from both the stipulated judgments, challenging the trial court's decisions denying Esurance's motion for summary disposition against Auto-Owners, denying her motion for summary disposition against Esurance, and denying her motion for reconsideration. She contended that the trial court erred in finding that she was domiciled with Frownfelter and a resident of his household. In an unpublished opinion issued on February 24, 2025, a split panel of the Court of Appeals affirmed the trial court's rulings, holding that plaintiff was domiciled with Frownfelter at the time of the accident pursuant to the divorce judgment and this Court's decision in *Grange*.[11] The Court of Appeals majority also held that plaintiff was a "resident" of her father's home at the time of the accident for purposes of application of the step-down provision in his Esurance policy. In a partial dissent, Judge GARRETT agreed with the majority's analysis of the domicile issue but disagreed with the majority's determination that this analysis also

---

[11] *Frownfelter v Esurance Prop & Cas Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued February 24, 2025 (Docket Nos. 366118 and 366120).

9

controls plaintiff's residency. In her view, the question of whether plaintiff was a resident of her father's household should have been resolved by interpreting the plain language of the insurance policy.

Plaintiff sought leave to appeal in this Court, and, in lieu of granting leave to appeal, we ordered oral argument on the application, directing the parties to file supplemental briefs addressing "whether the lower courts erred in concluding that: (1) the appellant was domiciled with her father, Corey Frownfelter, at the time of the January 8, 2020 motor vehicle accident, and (2) whether the lower courts erred in concluding that appellant was a resident of Frownfelter's household at the time of the accident."[12]

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo.[13] Summary disposition under MCR 2.116(C)(10) is appropriately granted where no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law.[14] Domicile is a common-law doctrine,[15] the interpretation and applicability of which is reviewed de novo.[16] A domicile determination in a particular case is generally a question

---

[12] *Frownfelter v Esurance Prop & Cas Ins Co*, ___ Mich ___, ___; 25 NW3d 671 (2025) (citations omitted).

[13] *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

[14] *Id*. at 120.

[15] *Grange*, 494 Mich at 481.

[16] See *Tkachik v Mandeville*, 487 Mich 38, 45; 790 NW2d 260 (2010).

of fact.[17]  A trial court's findings of fact are reviewed for clear error.[18]  However, where the underlying material facts are not in dispute, the determination of domicile is a question of law that is reviewed de novo.[19]  This Court likewise reviews issues of statutory construction de novo.[20]

## III.  ANALYSIS

This case requires the Court to reconsider the rule set forth in *Grange*, which states that where a child's parents are divorced and a family court has entered an order relating to custody, the custody order is solely determinative of a child's domicile for purposes of the no-fault act.[21]  After an examination of our common-law understanding of domicile, we hold that *Grange* was incorrectly decided.  We then engage in a stare decisis analysis, which compels us to overrule the *Grange* domicile rule.  Finally, we set forth and apply the applicable domicile framework.

## A.  DOMICILE GENERALLY

The concept of domicile has deep roots in Michigan law.[22]  Michigan courts have defined "domicile" as " 'that place where a person has voluntarily fixed his abode not for

---

[17] *Hartzler v Radeka*, 265 Mich 451, 452; 251 NW 554 (1933).

[18] See MCR 2.613(C).

[19] *Hartzler*, 265 Mich at 452.

[20] *Hannay v Dep't of Transp*, 497 Mich 45, 57; 860 NW2d 67 (2014).

[21] See *Grange*, 494 Mich at 481.

[22] See *In re High*, 2 Doug at 523 ("It may be laid down as a settled maxim that every man must have . . . a national domicile somewhere.").

11

a mere special or temporary purpose, but with a present intention of making it his home, either permanently or for an indefinite or unlimited length of time.' "[23]   Similarly, a domicile has been understood under the common law as being " 'the place where a person has his home, with no present intention of removing, and to which he intends to return after going elsewhere for a longer or shorter time.' "[24] Generally, domicile is "a question of fact and intent," and a determination of domicile involves looking at all the facts and circumstances to determine whether the evidence that a person is domiciled in one location outweighs the evidence that a person is domiciled in another location.[25]  "[O]ur common law has recognized that from the time of a person's birth—from childhood through adulthood—a person can only have a single domicile at any given point in time."[26]

There are three means of acquiring a domicile, which are generally applicable to all persons depending on the factual circumstances: "(1) domicile of origin or of nativity; (2) domicile of choice; and (3) domicile by operation of law."[27]  A domicile of origin or of nativity is established when a person is born, fulfilling the maxim that every person must have a domicile somewhere.[28]  A domicile by choice "occurs when a person replaces his

---

[23] *Henry v Henry*, 362 Mich 85, 101-102; 106 NW2d 570 (1960) (quotation marks and citations omitted).

[24] *People v Dowdy*, 489 Mich 373, 385; 802 NW2d 239 (2011), quoting *Hartzler*, 265 Mich at 452.

[25] *In re High*, 2 Doug at 523-524.

[26] *Grange*, 494 Mich at 494.

[27] 8 Mich Civ Jur, Domicile, § 1, p 198.

[28] See *In re High*, 2 Doug at 523-524.

current domicile by choosing another, consistent with the proposition that every person must have a domicile until a new domicile is determined."[29]  Finally, a domicile by operation of law occurs when a person with a legal disability lacks the capacity to acquire a domicile of choice, and thus the domicile is established by operation of law.[30]

Because a minor child typically cannot form the requisite intent to establish a domicile by choice, a minor child's domicile is determined, by operation of law, by the domicile of the child's parents.[31]  A person's domicile of origin is the starting point, and it remains the person's domicile until that domicile is usurped by a subsequent domicile attained by choice or by operation of law.[32]  Accordingly, where a child's parents have changed their own domicile, the domicile of the child likewise changes by operation of law.[33]  However, these common-law notions of domicile are not neatly applicable where a child's parents share, at a minimum, joint legal custody such that the child has two legal residences.

---

[29] *Grange*, 494 Mich at 502.

[30] See 1 Restatement Conflict of Laws, 2d, § 22, p 88 (domicile of minors); 8 Mich Civ Jur, Domicile, § 5, p 204.

[31] *Mississippi Band of Choctaw Indians v Holyfield*, 490 US 30, 48; 109 S Ct 1597; 104 L Ed 2d 29 (1989).  See also 8 Mich Civ Jur, Domicile, § 21, p 219 ("Everyone is assigned a domicile of origin at birth by operation of law.").  But note that when a minor child has been emancipated, they may establish a domicile by choice.  See MCL 722.4e(1)(d) ("A minor emancipated by operation of law or by court order has the rights and responsibilities of an adult . . . .  A minor is considered emancipated for the purposes of, but not limited to, . . . [t]he right to establish a separate domicile.").

[32] Specifically, "[t]he domicil[e] of origin is the domicil[e] which a person has at birth." 1 Restatement Conflict of Laws, 2d, § 14(1), p 59.  The domicile of origin "continues until a new domicil[e] is acquired."  *Id*., comment *a*.

[33] See *Herring v Mosher*, 144 Mich 152, 154-155; 107 NW 917 (1906).

13

## B. DOMICILE AND THE NO-FAULT ACT

Michigan's no-fault act has largely abolished tort liability arising from the ownership, maintenance, or use of a motor vehicle.[34]  Instead, insurance companies are required to provide first-party insurance benefits for accidental bodily injury arising out of the use of a motor vehicle, which are commonly referred to as PIP benefits.[35]  MCL 500.3114(1) sets forth the general rule for ascertaining which Michigan insurer is liable to provide PIP benefits under the circumstances of a specific case.  MCL 500.3114(1) states, in relevant part, as follows:

> Except as provided in subsections (2), (3), and (5), a personal protection insurance policy described in section 3101(1) applies to accidental bodily injury to the person named in the policy, the person's spouse, and *a relative of either domiciled in the same household*, if the injury arises from a motor vehicle accident.[36]

Relevant here, the statute limits PIP coverage for relatives of policyholders to those who are "domiciled in the same household[.]"

The no-fault act does not define the term "domiciled," but, as stated earlier, the term "has a precise, technical meaning in Michigan's common law," and the term "must be understood according to that particular meaning."[37]  Generally speaking, domicile determinations for purposes of assessing insurer liability in the no-fault context are made by considering the factual circumstances surrounding the party's living situation and by

---

[34] See MCL 500.3105.

[35] MCL 500.3107; MCL 500.3108.

[36] Emphasis added.

[37] *Grange*, 494 Mich at 492-493; see also MCL 8.3a.

balancing and weighing several factors, none of which is determinative on its own.[38]  A nonexhaustive list of factors for determining whether a person is "domiciled in the same household" for purposes of assessing insurer liability in the no-fault context was provided by this Court in *Workman*:

> (1) the subjective or declared intent of the person of remaining, either permanently or for an indefinite or unlimited length of time, in the place he contends is his "domicile" or "household"; (2) the formality or informality of the relationship between the person and the members of the household; (3) whether the place where the person lives is in the same house, within the same curtilage or upon the same premises; (4) the existence of another place of lodging by the person alleging "residence" or "domicile" in the household.[39]

Moreover, to address "the particular problems posed by young people departing from the parents' home and establishing new domiciles as part of the normal transition to adulthood," the Court of Appeals more than 40 years ago in *Dairyland Ins Co*[40] set forth additional relevant factors for determining whether a child of majority age is domiciled with their parents:

> [(1)] whether the claimant continues to use his parents' home as his mailing address, [(2)] whether he maintains some possessions with his parents, [(3)] whether he uses his parents' address on his driver's license or other documents, [(4)] whether a room is maintained for the claimant at the parents' home, and [(5)] whether the claimant is dependent upon the parents for support.[41]

---

[38] *Workman*, 404 Mich at 496.

[39] *Id*. at 496-497 (citations omitted).

[40] *Dairyland*, 123 Mich App 675.

[41] *Id*. at 682.

More recently, this Court addressed where a minor child is domiciled for purposes of no-fault insurance when the child's parents maintain two separate households. In *Grange*, the Court considered "whether a child of divorced parents who has a legal residence in both parents' homes and who is injured in an automobile accident can be 'domiciled' in more than one household within the meaning of MCL 500.3114(1)" and "whether a family court order establishing the custody of minor children is conclusive evidence of a child's domicile for purposes of determining coverage under MCL 500.3114(1)."[42]

As to the first issue, this Court unanimously held that, "consistent with traditional definitions of the term 'domicile' under the common law and as that term is used in MCL 500.3114(1), . . . a child of divorced parents has only one domicile at any given point in time."[43] This holding was faithful to our established law and remains sound.[44]

The *Grange* majority then went on to hold that, "in the event that the child's parents are divorced and a family court has entered an order relating to custody, . . . the child's domicile is established by operation of law and . . . the custody order is thus determinative of the child's domicile for all purposes, including the no-fault act."[45] Specifically, the majority noted that "a child's domicile, upon the divorce or separation of the child's parents, is the same as that of the parent to whose custody *he has been legally given*

---

[42] *Grange*, 494 Mich at 481.

[43] *Id*.

[44] See *Dowdy*, 489 Mich at 385; *In re High*, 2 Doug at 522.

[45] *Grange*, 494 Mich at 481.

pursuant to a custody order."[46]  That is, "a child's domicile upon . . . entry of a custody order is established by operation of law consistent with the terms of the custody order."[47] This Court explained that, although parents might ordinarily be permitted to alter a child's domicile to be consistent with their own, "parents are legally bound by the terms of the custody order[.]"[48]  "[T]he order therefore negates the parents' legal capacity, which is necessary to establish a domicile of choice for the minor child that is different from that established in the custody order."[49]  Consequently, a majority of this Court held that "courts presiding over an insurance coverage dispute involving the minor child of divorced parents must treat a custody order as conclusive evidence of a child's domicile."[50]  In such cases, "the factual circumstances or the parents' or child's intentions are irrelevant to the domicile determination."[51]  The Court made clear that the relevant consideration is which parent has *physical* custody under the terms of the order:

> In directing courts to abide by the custody order, we are cognizant that the Child Custody Act draws a distinction between physical custody and legal custody: Physical custody pertains to where the child shall physically "reside," whereas legal custody is understood to mean decision-making authority as to important decisions affecting the child's welfare.  Because the focus under our common law with respect to domicile mostly concerns a question of location and the same is true with respect to a child's domicile in

---

[46] *Id*. at 504.

[47] *Id*. at 505.

[48] *Id*. at 508.

[49] *Id*. at 508-509.

[50] *Id*. at 511.

[51] *Id*.

17

the instance that the parents are divorced, the relevant consideration is which parent has *physical custody* under the terms of the order.[52]

The Court additionally anticipated that, in what it considered to be some rare instances, custody orders may grant joint physical custody and equal parenting time, as in the case before us today. In a footnote, the Court offered guidance to lower courts on how to handle such cases:

> Although not presently before this Court, we recognize that determining domicile by reference to a custody order may appear to lead to a perplexing result where the order grants each parent joint physical custody under MCL 722.26a(7) *and* creates an equal 50/50 division of physical custody. To begin with, we emphasize that an award of joint physical custody alone does not automatically create this potentially perplexing situation because although an order may award joint physical custody, it may also establish that one parent has *primary* physical custody. Alternatively, the details of the physical custody division may reveal that one parent has physical custody of the child more often than the other parent despite the joint physical custody arrangement. Thus, it is only in the very rare event that a custody order awards joint physical custody *and* grants both parents an equal amount of time to exercise physical custody that this issue arises. Indeed, MCL 722.26a(7) does not require that parents share *equal* physical custodial time for a court to award joint physical custody; rather, [MCL 722.26a(7)(a)] merely defines joint physical custody as an order "[t]hat the child shall reside *alternately for specific periods* with each of the parents." Emphasis added. The statute does not, however, require that the child reside with each parent for an *equal* amount of time to constitute joint physical custody.

> In the unusual event that a custody order *does* grant an equal division of physical custody, and only in this instance, then the child's domicile would alternate between the parents so as to be the same as that of the parent with whom he is living at the time. Restatement, § 22 (1971). Thus, the child's domicile is with the parent who has physical custody as established by the custody order at the specific time of the incident at issue. This approach is

---

[52] *Id*. at 511-512 (citations omitted).

consistent with the terms of the custody order and avoids a finding that the child has dual coexisting domiciles.[53]

The Court of Appeals in the instant case held that the facts of this case fall squarely within the situation contemplated in *Grange* because "the custody order awarded joint physical custody, and granted the parents an equal amount of time to exercise parenting time while plaintiff *resided* with them[.]"[54] Accordingly, because it is undisputed that Frownfelter had physical custody of plaintiff on the day of the accident, the Court of Appeals agreed with the trial court that plaintiff was domiciled with Frownfelter for purposes of MCL 500.3114.

## C. *GRANGE* WAS INCORRECTLY DECIDED

I authored a concurrence in *Grange*, disagreeing with the majority's novel rule and describing it as an "attempt[] to extend the common-law doctrine of domicile by operation of law beyond its logical and practical bounds."[55] Upon reflection of the rule established in *Grange*, today a majority of the Court agrees with the critique of the *Grange* majority outlined in the concurrence. The concerns about the majority's test have been borne out with the passage of time, and this case perfectly illustrates why the *Grange* majority rule is not only legally flawed but falls far short of addressing the practical realities of postdivorce familial relationships.

---

[53] *Id*. at 512 n 78.

[54] *Frownfelter*, unpub op at 7.

[55] *Grange*, 494 Mich at 527 (ZAHRA, J., concurring). The Court was divided 4-3 in adopting the rule outlined in the *Grange* majority opinion.

The entire underpinning of the *Grange* majority decision—that a custody order is capable of definitively establishing a child's domicile by operation of law—is legally unsupported and creates the very type of "dual domicile" that the *Grange* majority itself rejected. As noted above, unemancipated minor children cannot establish a domicile by choice given their incapability to form the requisite intent.[56] Thus, it has been traditionally accepted that a child's domicile is set, by operation of law, by the domicile of the child's parents.[57] But domicile by operation of law "is not easily determined when parents share joint legal custody, given that joint legal custody creates two legal residences for the child, either of which could constitute the child's domicile."[58] This is because, while the domicile-by-operation-of-law framework in the custody context indicates that there are two potential residences where a child could be considered domiciled,[59] the doctrine does not answer which legal residence constitutes the child's domicile, of which there can only be one.

We conclude that the Court in *Grange* oversimplified the analysis by holding that domicile attaches by operation of law according solely to the terms of the applicable custody order. The majority in *Grange* initially acknowledged that the Legislature

---

[56] See *Mississippi Band of Choctaw Indians*, 490 US at 48.

[57] See *id*.

[58] *Grange*, 494 Mich at 527-528 (ZAHRA, J., concurring).

[59] Under § 11 of the Child Custody Act, where the parents of a child share joint legal custody and parental custody of that child is governed by a court order, the child is considered to have a legal residence with each parent for purposes of evaluating a parent's action to change the child's legal residence. MCL 722.31.

20

intended that the term "domiciled" as used in MCL 500.3114(1) should be interpreted in accordance with its common-law meaning, but proceeded to set forth a perfunctory domicile test reliant solely on the terms of a custody order, eschewing the traditional methods used to ascertain domicile under our common law.[60] And in reaching its holding, the *Grange* majority erroneously assumed that physical custody orders under the Child Custody Act are equivalent to domicile determinations.

We disagree that the family court has the authority under the Child Custody Act to explicitly set a child's domicile by court order. The Child Custody Act does not address "domicile" in its application to a child custody dispute.[61] The Child Custody Act instead considers the best interests of a child in identifying and preserving a child's "established custodial environment."[62] An "established custodial environment" depends

---

[60] As the majority in *Grange* acknowledged, "*Workman* adopts a multifactor domicile test that is analytically the same as the traditional domicile test employed for more than a century at common law." *Grange*, 494 Mich at 499. See also *id*. at 498 n 41 ("The *Workman-Dairyland* multifactored framework comprises the one now commonly employed by Michigan courts when a question of fact exists as to where a person is domiciled.").

[61] The Child Custody Act repeatedly uses the phrase "legal residence" and refers to "domicile" only in MCL 722.27b(9), stating: "The court shall not enter an order prohibiting an individual who has legal custody of a child from changing the domicile of the child if the prohibition is primarily for the purpose of allowing a grandparent to exercise the rights conferred in a grandparenting time order entered under this section." The use of the term "domicile" in this section does not suggest that family courts have the authority to establish, as a matter of law, a child's domicile in making a custody determination. Rather, this section assumes a parent has legal custody of a child, and it prohibits a court from barring that parent from a change of domicile so that a grandparent may seek or maintain visitation with the child.

[62] Family courts are charged with making determinations that focus on the best interests of the child. See MCL 722.27(1) ("If a child custody dispute has been submitted to the circuit

21

"upon a custodial relationship of a significant duration in which [the child is] provided the parental care, discipline, love, guidance and attention appropriate to his age and individual needs; an environment in both the physical and psychological sense in which the relationship between the custodian and the child is marked by qualities of security, stability and permanence."[63]

Unlike with domicile, an established custodial environment may exist with both parents and in more than one home.[64] The relevant inquiries are therefore distinct, as the best-interest factors, while pivotal to a custody determination, are irrelevant in ascertaining domicile. The traditional domicile inquiry focuses on where a person has fixed their abode and has no effect on family court adjudications regarding a child's custody and legal residence. Indeed, no-fault decisions regarding insurer priority on the basis of domicile determinations are inapposite to custody and legal residence determinations in the family court context because no-fault law focuses on the practical issue of which insurer is liable for insurance coverage and does not take into consideration the best interests of the child.

---

court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, *for the best interests of the child* the court may do 1 or more of the following[.]") (emphasis added); see also MCL 722.31(4) ("Before permitting a legal residence change otherwise restricted by subsection (1), the court shall consider each of the following factors, *with the child as the primary focus* in the court's deliberations[.]") (emphasis added); *Gagnon v Glowacki*, 295 Mich App 557, 570; 815 NW2d 141 (2012) ("After granting a change of domicile, the trial court must determine whether there will be a change in the established custodial environment and, if so, determine whether the relocating parent can prove, by clear and convincing evidence, that the change is in *the child's best interest*.") (emphasis added).

[63] *Sabatine v Sabatine*, 513 Mich 276, 286; 15 NW3d 204 (2024), quoting *Baker v Baker*, 411 Mich 567, 579-580; 309 NW2d 532 (1981).

[64] *Rittershaus v Rittershaus*, 273 Mich App 462, 471; 730 NW2d 262 (2007).

Blanketly importing a determination made under the Child Custody Act to the context of the no-fault act conflates these two distinct legal concepts.

In many cases, it may very well be that a child's domicile is the same as the custodial environment or physical custody breakdown set forth in the custody order. But a custody order does not have the effect of *creating* domicile; instead, it creates the custodial environment from which domicile can be established. Phrased differently, a family court's custody order setting forth the legal residence of a child can establish custodial environments from which a domicile might arise. A custodial environment will therefore often inform the legal determination of domicile. But custodial environment and domicile are distinct concepts, and the Child Custody Act nowhere purports to establish domicile. Thus, we reject the *Grange* majority's holding that a custody order is capable of dispositively setting a child's domicile by operation of law.

Undoubtedly because the considerations inherent in the Child Custody Act are unique to that act and are not neatly transferable to other areas of the law, application of the *Grange* majority test undermines well-established concepts of domicile law. And, as will be discussed below, while surely the *Grange* majority hoped that its rule would be easily applied in all cases, this has simply not proved to be true. The *Grange* rule is not easily applied to custody orders that are not clearly drafted or that provide discretion to the parties as to how to structure their parenting time. And significantly, the rule is particularly ill-suited for cases in which a custody order grants each parent joint physical custody under MCL 722.26a(7) and creates an equal division of physical custody. While the Court in *Grange* opined that this 50/50 division would be an "unusual event," this custody

23

arrangement has become a very common one.[65]  Thus, applying *Grange*, a child can have a different domicile on a week-by-week, or even day-by-day, basis.  This framework of constantly shifting domicile undercuts the notion of permanence that is contemplated by our common law.

While the *Grange* majority acknowledged that a child may have only one domicile at once, "the majority's alternating-domicile theory for children whose parents share joint physical custody contradicts this long-standing principle and in substance permits dual domiciles for such children."[66]  Stated differently, the system established by the *Grange* opinion "is a semantic end-run around our traditional rule that a person may only have one domicile and ignores the practical reality that in virtually all cases, a child will have a primary residence that will constitute the child's domicile."[67]  As noted in the *Grange* concurrence,

---

[65] In fact, at least five states have enacted laws that create a statutory rebuttable presumption that 50/50 joint physical custody is in a child's best interests, with many others purportedly considering similar legislation.  See Ky Rev Stat 403.270(2) (Kentucky); Ark Code Ann 9-13-101(a)(1)(A)(iv) (Arkansas); W Va Code 48-9-102a (West Virginia); Fla Stat 61.13(2)(c)1 (Florida); and Mo Rev Stat 452.375 (Missouri).  Notably, a bill introduced in the Michigan House proposes creating "a presumption that it is in the best interests of the child to award equal or approximately equal parenting time to each parent.  The presumption may be rebutted only by clear and convincing evidence placed on the record that equal or approximately equal parenting time is not in the best interests of the child." 2025 HB 5211.  Regardless of whether this bill, or a similar version, ultimately becomes law in Michigan, it is at the very least reflective of the reality that it is common for custody orders to award 50/50 physical custody.

[66] *Grange*, 494 Mich at 528 (ZAHRA, J., concurring).

[67] *Id*. at 517.

[t]his alternating-domicile concept is unprecedented in the domicile jurisprudence of this state, which views domicile as that place where a person ultimately returns, despite going elsewhere for a period of time. As the [*Grange*] majority states, "For over 165 years, Michigan courts have defined 'domicile' to mean 'the place where a person has his true, fixed, permanent home, and principal establishment, and to which, whenever he is absent, he has the intention of returning.' " The fact that a child cannot establish a domicile by choice is not a sufficient reason to ignore that *permanence* underpins the concept of domicile in our jurisprudence.[68]

Thus, in some scenarios, the *Grange* rule creates a dual domicile system that is contrary to centuries of our domicile law. It is therefore unsurprising that recent panels of the Court of Appeals have struggled to consistently apply *Grange*'s rule.[69]

---

[68] *Id*. at 528-529 (ZAHRA, J., concurring), quoting *In re High*, 2 Doug at 523; see also *Grange*, 494 Mich at 529 n 40 (ZAHRA, J., concurring), quoting *In re High*, 2 Doug at 522 (" '[Domicile] is always that place which has more of the qualities of a principal or permanent residence, and more pretensions to be considered as such, than any other place.' ").

[69] The Court of Appeals has struggled to apply the *Grange* rule in different factual situations. For example, in *Corbin v Meemic Ins Co*, 340 Mich App 140; 985 NW2d 217 (2022), the Court of Appeals declined to apply *Grange* where an order of filiation "did not establish a primary custodial parent or otherwise fix a parenting time schedule." *Id*. at 152. The *Corbin* panel explained that the *Grange* rule "does not cleanly apply here because the order of filiation did exactly what the custody orders in *Grange* did not: it reserved to the parents their right to determine both residence and domicile, with some limitations." *Id*. at 153. Therefore, "the trial court needed to look beyond the order of filiation to determine plaintiff's actual domicile, as the order of filiation was not dispositive." *Id*. The Court of Appeals thus held that "the trial court should have reverted to the traditional multifactored analyses" from *Workman* and *Dairyland* to determine domicile. *Id*. See also *Davis v Auto Club Ins Ass'n*, unpublished per curiam opinion of the Court of Appeals, issued June 23, 2025 (Docket No. 370748), pp 5-6 (holding, pursuant to *Grange*, that a child cannot be domiciled anywhere other than the child's parents' residences, regardless of where the child was actually living, meaning that the child was not domiciled with the aunt with whom the child lived).

25

The *Grange* rule disregards the practical reality that circumstances might change for divorced parents and their children over time and that the parents might not seek to update an outdated custody order. The rule also unduly impinges on the ability of an insurer to accurately assess its risks when entering into insurance agreements. The *Grange* majority's rule places PIP liability on the insurer of the parent who has been ordered to have physical custody, even when the child is not primarily living with that parent. And the rule is inconsistent with the no-fault act, which provides PIP protection for "accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled *in the same household*[.]"[70] For all these reasons, we disagree with the *Grange* Court's holding that a custody order is solely determinative of a child's domicile for purposes of the no-fault act, and we therefore hold that *Grange* was incorrectly decided.

## D. STARE DECISIS ANALYSIS

Given our conclusion that the *Grange* domicile rule was incorrectly adopted, we must now give serious consideration to the doctrine of stare decisis and determine whether application of the stare decisis factors weighs in favor of overruling that decision and adopting the preferred rule previously discussed.[71]

---

[70] MCL 500.3114(1). Under the *Grange* majority's rule, a child could be "domiciled" in one state pursuant to a custody order but actually live in another state. It is difficult to discern how such a situation could constitute being "domiciled *in the same household*" for purposes of MCL 500.3114.

[71] Plaintiff argues that footnote 78 of *Grange* constituted dicta, meaning that the Court need not perform a stare decisis analysis or explicitly overrule *Grange* in order to grant plaintiff relief in this case. It is true that the Court in *Grange* did not need to consider the factual scenario set forth in footnote 78, given that the custody order in that case did not award the involved parents joint physical and legal custody as well as equal parenting time. But the majority holding in *Grange* is based on the same reasoning as footnote 78—that the

26

That a case was wrongly decided, by itself, does not necessarily mean that overruling it is appropriate.[72] Indeed, adherence to precedent is generally " 'the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.' "[73] That being said, "stare decisis is not to be applied mechanically to forever prevent the Court from overruling earlier erroneous decisions . . . ."[74] We must "recognize that stare decisis is a 'principle of policy' rather than 'an inexorable command,' and that the Court is not constrained to follow precedent when governing decisions are unworkable or are badly reasoned."[75]

Consequently, in determining whether to overrule a previous incorrectly decided opinion, this Court has set forth the following factors that are particularly relevant in determining whether to overrule that precedent:

> (1) "whether the rule has proven to be intolerable because it defies practical workability," (2) "whether reliance on the rule is such that overruling it would cause a special hardship and inequity," (3) "whether upholding the rule is likely to result in serious detriment prejudicial to public interests," and

---

custody order alone determines the child's domicile. To reject this approach requires overruling the *Grange* domicile rule itself, not just footnote 78, and this necessitates a stare decisis analysis.

[72] *Robinson v Detroit*, 462 Mich 439, 465; 613 NW2d 307 (2000).

[73] *Id*. at 463, quoting *Hohn v United States*, 524 US 236, 251; 118 S Ct 1969; 141 L Ed 2d 242 (1998).

[74] *Robinson*, 462 Mich at 463.

[75] *Id*. at 464, quoting *Hohn*, 524 US at 251.

(4) "whether the prior decision was an abrupt and largely unexplained departure from precedent."[76]

We first consider whether the rule in *Grange* defies practical workability. It is true that, on paper, that rule is workable in that a court purportedly need only examine a custody order in order to ascertain a child's domicile. In cases involving a clearly drafted custody order, the *Grange* rule undoubtedly constitutes an efficient way for a court to determine domicile. But, in practice, *Grange* has significant workability problems. As an initial matter, the *Grange* rule is not easily applicable to all custody orders. Some custody orders are not clearly drafted.[77] And even a clearly drafted custody order might leave the custody breakdown or the dates or times of the custody exchanges to the discretion of the parties. In those scenarios, simply examining the custody order will not tell the court where a child was domiciled and courts may need to engage in additional fact-finding to determine which parent the child was domiciled with when an accident occurred. These cases already require courts to apply the traditional multifactor approach from *Workman/Dairyland*.[78]

---

[76] *McCormick v Carrier*, 487 Mich 180, 211; 795 NW2d 517 (2010) (opinion by M. F. CAVANAGH) (citation omitted).

[77] Even the custody order at issue in this case is subject to multiple interpretations. The order states that "[t]he residence of the minor children . . . shall be with [Lawrence], at her current address . . . 50% of the time and with . . . [Frownfelter], at his current address" without explicitly assigning Frownfelter 50% of the time. We agree with the Court of Appeals that it is reasonable to conclude that the 50% language was be implied as to the father's custody time. But plaintiff argues that the order can be interpreted to function as a floor on the mother's share of physical custody, meaning that she would have no less than 50% of physical custody, but could potentially have more.

[78] See *Corbin*, 340 Mich App at 153-154.

28

As will be thoroughly discussed below, even clearly written custody orders very often do not reflect reality. Many divorced parents are flexible with their custody arrangements, and as a result, the custody order will not be representative of the actual custody arrangement in practice. This is particularly likely when many years have passed since the custody order was issued and the children in question have grown up and gained independence. A high school student's living arrangements are unlikely to conform to a custody order issued when they were a toddler. Thus, application of the *Grange* rule may result in domicile determinations that are at odds with the actual living arrangements of the parties. Moreover, this case perfectly encapsulates the dysfunction of the *Grange* approach in cases with custody orders granting joint physical custody and equal parenting time, in that plaintiff's domicile was capable of shifting weekly or daily according to which parent's home she stayed overnight in. In short, while the *Grange* majority rule may appear superficially workable, it has proven to be significantly less so in practice.

Second, we consider whether reliance interests weigh in favor of overruling the *Grange* rule. We conclude that they do. In considering this factor, "the Court must ask whether the previous decision has become so embedded, so accepted, so fundamental, to everyone's expectations that to change it would produce not just readjustments, but practical real-world dislocations."[79] *Grange* was decided only 13 years ago, so any reliance on its holding has been relatively brief. While *Grange* has been often cited by the lower courts for the point of law on which we overrule it, as discussed earlier, multiple

---

[79] *Robinson*, 462 Mich at 466.

courts have struggled to apply *Grange*, with several panels of the Court of Appeals finding ways to distinguish that decision.[80]

More importantly, it is highly unlikely that parties specifically rely on this Court's decision in *Grange* when entering into their insurance contracts. That is, it is unlikely that motor vehicle drivers, and the victims of motor vehicle accidents, have altered their behavior in reliance on the domicile rule in *Grange*. Where a statute deals with the consequences of accidents, it is only *after* an accident that such awareness of the law would come, because after an accident is when those involved seek coverage from their respective insurers. "Such after-the-fact awareness does not rise to the level of a reliance interest because to have reliance the knowledge must be of the sort that causes a person or entity to attempt to conform his conduct to a certain norm before the triggering event."[81] This factor weighs in favor of overruling the *Grange* rule.

Third, upholding the *Grange* rule will result in serious detriment prejudicial to public interests. Keeping the shifting domicile framework in place is contrary to the public interest. In the situation contemplated by footnote 78 of *Grange*, a child's domicile for the purposes of MCL 500.3114(1) is not determined until the time of the pertinent accident. As a result, neither the parents nor the insurer can be certain whether a policy will cover their child until the child needs coverage. This seriously hampers divorced parents' ability to ensure that their children will be properly covered and might, in some instances, lead to catastrophically injured children being uninsured or underinsured. This is inconsistent with

---

[80] See note 69 of this opinion.

[81] *Robinson*, 462 Mich at 466-467.

the no-fault act's goal of providing auto accident victims with "assured, adequate, and prompt reparation"[82] and is prejudicial to public interests.

Finally, while *Grange* may not have constituted an abrupt or unexplained departure from precedent, it did constitute a departure from the traditional multifactor approach applied in our common law when ascertaining domicile, and for no-fault cases especially, where courts have routinely applied the *Workman* and *Dairyland* factors. Indeed, the *Grange* majority itself noted that "[t]he *Workman-Dairyland* multifactored framework comprises the one now commonly employed by Michigan courts when a question of fact exists as to where a person is domiciled."[83] *Grange* did not overrule previous caselaw or depart from precedent but instead attempted to apply traditional domicile and custody concepts in the no-fault context. But in doing so, the majority created a novel domicile scheme that does not comport with our traditional understanding of domicile.

In sum, the stare decisis factors, taken as a whole, compel this Court to overrule the rule in *Grange*. Upholding the *Grange* rule is likely to result in serious detriment prejudicial to public interests, and reliance and workability interests also weigh in favor of overruling that decision.

### E. THE APPLICABLE DOMICILE FRAMEWORK

Having overruled the *Grange* majority's rule, we adopt the general framework set forth by the *Grange* concurrence. We see no principled reason to treat the domicile

---

[82] *Shavers v Attorney General*, 402 Mich 554, 579; 267 NW2d 72 (1978).

[83] *Grange*, 494 Mich at 498 n 41.

31

determination differently in this context than in all others. Like the traditional examination of a person's domicile, the determination of the domicile of a child with two legal residences requires a review of *all* the facts and circumstances to determine whether the evidence that the child is domiciled in one legal residence outweighs the evidence that the child is domiciled in another legal residence.[84] In making this determination, the *Workman* and *Dairyland* factors, which derive from the common law, are useful because they reflect the actual living situation of the child.

Of course, determining the domicile of a minor child with divorced parents undeniably involves consideration of the family court's rulings regarding where a child resides. While we disagree with the *Grange* majority that the applicable custody order is *dispositive* in ascertaining a child's domicile, an inquiry into where a child is domiciled necessarily involves some consideration of the family court's orders relating to the custody of a child and a child's legal residence. This is because "[a] family court's custody and residence determinations inform where and with whom the child is *supposed* to live, sleep, spend his or her time, and ultimately return, though the child may spend time elsewhere."[85] "While generally no one factor is conclusive in determining domicile, in this unique context, a family court's custody and residence determinations can serve as the starting point for determining a child's domicile because '[a] party must obey an order entered by

---

[84] See *In re High*, 2 Doug at 523-524.

[85] *Grange*, 494 Mich at 532 (ZAHRA, J., concurring).

a court with proper jurisdiction.' "[86]  In essence, the initial custody order "function[s] as a proxy for the intent of the parents regarding the child's domicile, due to the parents' inability to form a joint parental intent."[87]

But custody arrangements between parties often informally change without court awareness or recognition.  Especially with the passage of time, "a child's living situation will not always align with the family court's orders, despite the general rule that a party must follow the orders of a court."[88]  Indeed, it is very common for parents to resolve their differences over time to "reach amicable, private agreements, reflective of their joint intent, that conflict with an existing family court order."[89]  Thus, an initial custody order may not accurately reflect the present living situation of the minor child at issue.  Consequently, while courts should look to the custody order when determining a child's domicile, this should not be the only consideration, as the order is not always reflective of reality.

---

[86] *Id.* at 531, citing *Workman*, 404 Mich at 496, and quoting *Kirby v Mich High Sch Athletic Ass'n*, 459 Mich 23, 40; 585 NW2d 290 (1998) (alteration in *Grange*).

[87] *Grange*, 494 Mich at 532 (ZAHRA, J., concurring).  While the *Grange* concurrence referred to a "presumption" that a child's domicile is determined by the custody order, see *id.*, we clarify that a custody order serves as a starting point for what the parties initially intended to be the child's domicile.  In reality, a trial court will always need to consider the facts to ascertain whether the custody order is reflective of the actual living arrangement of the involved parties.

[88] *Id.*

[89] *Id.* at 533.  Parents have a legal duty to seek the family court's approval of amicable agreements regarding custody modifications.  See *id.* at 533-534, citing MCL 722.27(1)(c).  But this simply does not always occur.

We conclude that, for purposes of determining domicile under the no-fault act, where the facts regarding the child's living arrangements are reasonably consistent with the provisions of the family court's orders, those orders will generally be determinative of the child's domicile.[90] That is, the custody order constitutes an appropriate starting point when ascertaining a child's domicile, and where the facts demonstrate that the parties are acting consistently with that custody order, it is reasonable to conclude that the custody order is reflective of the child's domicile. But "[w]here the facts of the child's living arrangements are so clearly inconsistent with the family court's orders that it is reasonable to conclude that the child's parents have expressly or impliedly reached an agreement regarding the child's domicile that differs from the domicile indicated by the family court's orders,"[91] those orders should not be considered representative of the child's domicile. In all cases, courts should make domicile determinations in light of the actual facts of the custodial situation, rather than solely on the basis of a court order that may have little relevance to the actual living situation of the child after the passage of time, namely, with regard to which parent actually has physical custody of the child.

---

[90] Some custody orders will undoubtedly be more useful in ascertaining a child's domicile than others. For example, if the order grants sole physical custody to one parent, this is likely a good indicator that the child resides with that parent the bulk of the time and is domiciled with that parent, in contrast to an order that calls for a more equal division of custody. Additionally, it makes logical sense that a newer custody order is more likely to be indicative of the parties' current practices than an older order, simply due to the fact that less time has passed during which the parties could have deviated from that arrangement. These examples are not intended to set forth bright-line rules, nor will they always be accurate; they merely illustrate that a custody order, while a good starting point, is simply that: a starting point.

[91] *Grange*, 494 Mich at 534-535 (ZAHRA, J., concurring).

34

In making these determinations, courts should look to the traditional factors for determining domicile for purposes of no-fault insurance articulated by this Court in *Workman* and, particularly, those articulated by the Court of Appeals in *Dairyland*, as those factors address whether a child is domiciled with their parents under the no-fault act.[92] Additionally, there are other factors that are uniquely relevant in the context of minor children whose parents share joint custody: (1) where the child actually spends the majority of their time and (2) where the child actually sleeps most nights of the week. Again, none of these domicile factors is alone dispositive, but collectively, they are good indicators of where a child is domiciled. Nor are these factors exhaustive; *Workman* and *Dairyland* did not purport to set forth exhaustive factors and there is room for other relevant considerations, within the fact-finder's discretion.[93]

We conclude that this framework is more faithful to our longstanding domicile jurisprudence as a whole and will enable courts to apply a uniform approach in determining the domicile of all minor children of divorced or separated parents, ensuring more

---

[92] It is true that *Dairyland* involved a child who had reached the age of majority, but its factors are similarly relevant for determining the intent of a minor child's parents regarding the child's domicile because they focus on objective indicators of the intent to have the child remain permanently in a given home.

[93] While defendants argue that this test would be more burdensome for courts to apply than the rule adopted in *Grange*, we think their concerns are overstated. It is burdensome for courts to be faced with multiple rules to choose from, depending on the relevant custody order language, as is the case under the current rule. As noted above, courts have already struggled to apply the *Grange* majority rule. See note 69 of this opinion. And, while it is true that application of the new rule will require an examination of the facts, we simply require courts to apply the domicile factors that courts already routinely apply in every other context, an inquiry that has not proven to be overly burdensome.

consistent results that are faithful to the actual living arrangement of the child. This framework will also allow no-fault insurers to more accurately assess risk, afford parents of divorced children the freedom to agree to depart from the terms of the custody order without unknowingly placing their child at risk of being uninsured or underinsured, and eliminate the unrealistic burden placed on family courts to consider the no-fault law when issuing a custody order.

## IV. CONCLUSION

We overrule the holding in *Grange* that a custody order establishes a child's domicile by operation of law and is dispositive of the child's domicile for all purposes, including the no-fault act. Instead, we clarify that the custody order serves as a starting point in ascertaining a child's domicile, but ascertaining the domicile of a child with two legal residences requires a review of all the facts and circumstances to determine whether the evidence that the child is domiciled in one legal residence outweighs the evidence that the child is domiciled in another legal residence. Where the facts demonstrate that the parties are acting consistently with the pertinent custody order, it is reasonable to conclude that the custody order is reflective of the child's domicile. But where the facts of the child's living arrangements are clearly inconsistent with the family court's orders, those orders should not be considered representative of the child's domicile. In making these determinations, courts should look to the traditional factors for determining domicile for purposes of no-fault insurance articulated by this Court in *Workman* and by the Court of Appeals in *Dairyland*, as well as the other nonexhaustive factors discussed above.

36

We vacate the judgment of the Court of Appeals with respect to its holding that plaintiff was domiciled with her father, Frownfelter, at the time of the subject motor vehicle accident. We also vacate the judgment of the Court of Appeals with respect to its holding that plaintiff was a resident of Frownfelter's home at the time of the accident, as the lower courts' residency determinations flowed directly from their conclusions that plaintiff was domiciled with Frownfelter.[94] We remand this case to the trial court for proceedings consistent with this opinion.

> Brian K. Zahra
> Megan K. Cavanagh
> Richard H. Bernstein
> Elizabeth M. Welch
> Kyra H. Bolden
> Noah P. Hood

---

[94] The lower courts also concluded that plaintiff was a resident of Frownfelter's home for purposes of the step-down provision in Frownfelter's Esurance policy. The lower courts reached this conclusion based largely on their initial findings that plaintiff was domiciled with Frownfelter. Indeed, the Court of Appeals explained that "the trial court determined that once it had decided that plaintiff was domiciled with Frownfelter at the time of the accident, it necessarily followed that she resided with him," *Frownfelter*, unpub op at 9, a conclusion that the Court of Appeals noted was consistent with *Grange*. The panel also opined that "the most pertinent sources to this case are the trial court's determination of domicile, which we have already affirmed, and the judgment of divorce that specifically determines the place of residence, which we find is controlling as we understand *Grange*." *Id*. at 10. In light of this Court's vacating of the Court of Appeals' determination that plaintiff was domiciled with Frownfelter and overruling of the *Grange* domicile rule, on which the lower courts relied, we remand this case to the trial court for reconsideration of whether plaintiff was a "resident" of Frownfelter's home under the terms of the Esurance insurance policy.

37

STATE OF MICHIGAN

SUPREME COURT


MCKENNA FROWNFELTER,

      Plaintiff-Appellant,

v                                                                No. 168356

ESURANCE PROPERTY AND
CASUALTY INSURANCE COMPANY,

      Defendant/Third-Party
      Plaintiff-Appellee,

and

PROGRESSIVE MICHIGAN INSURANCE
COMPANY, FARMERS INSURANCE
COMPANY, and AUTO-OWNERS
INSURANCE COMPANY,

      Third-Party Defendants-
      Appellees.

_____

MCKENNA FROWNFELTER,

      Plaintiff-Appellant,

v                                                                No. 168357

COREY FROWNFELTER, AUTO-
OWNERS INSURANCE COMPANY, and
ESURANCE PROPERTY AND
CASUALTY INSURANCE COMPANY,

      Defendants-Appellees.

_____

THOMAS, J. (*concurring*).

I concur with the majority's resolution of the instant case and its reasoning in critiquing the ruling in *Grange Ins Co of Mich v Lawrence*, 494 Mich 475; 835 NW2d 363 (2013). I also concur with the majority's holding that, in determining a minor child's domicile for purposes of no-fault insurance, a judgment of divorce or other custody orders, while informative, are only a starting point, and courts must consider the factors and circumstances pertinent to a domicile determination for a minor child of divorced parents. I write separately primarily to highlight the implications of this case for our family courts.

As an initial matter, my preference would have been to decide this case more narrowly. As the majority notes, the aspect of *Grange* relied on by the lower courts was footnote 78, which was dicta. Dicta are statements or comments concerning a rule of law or legal proposition that are not essential to determination of the case at hand and therefore lack the force of adjudication. *Hett v Duffy*, 346 Mich 456, 461; 78 NW2d 284 (1956), overruled on other grounds by *Weller v Mancha (On Rehearing)*, 353 Mich 189, 194 (1958). *Grange*'s footnote 78 did not address facts at issue in *Grange*, but was instead a speculative note on what *could* be the resolution for a different, hypothetical set of facts. This is classic dictum. Because the case before us involves a court order involving a 50/50 parenting-time arrangement, *Grange* does not constrain our analysis. And I agree with the majority that the *Grange* rule is "particularly ill-suited" for cases involving a 50/50 division of parenting time.[1] While the majority overrules *Grange* in all aspects for thoughtful

---

[1] As noted by the majority, even if the *Grange* Court was correct about the relative infrequency of 50/50 divisions at that time, cases involving 50/50 custody and/or parenting time are common now. Our Legislature has periodically introduced bills to make them a

2

reasons, we also could have left the question of whether to overrule *Grange* until it was necessary. I, however, agree with the majority's holding and the test that it applies.

As indicated above, I write separately to highlight our ruling in this case for family-law courts, attorneys, and litigants. Michigan's family-court judges and staff, and the attorneys who practice in these courts, provide a valuable service while dealing with stressful, often complicated, situations. There are estimated to be more than 16,000 Michigan children involved in a divorce each year.[2] And in these situations, vehicle insurance is unsurprisingly not top of mind, especially insurance for a minor child who is not yet a driver.

Family courts are required by law to address many questions regarding the provision of insurance or other protections for minor children in a divorce, but vehicle insurance is not among them. When a family court enters a judgment of divorce, the court must, by law, address life insurance,[3] pensions and retirement benefits,[4] and real property rights.[5] The statute is silent, however, as to obligations regarding vehicle insurance. Family courts

---

presumptive default. See, e.g., 2026 SB 940, 941, and 942 and 2025 HB 5211, 5212, and 5213; see also 2017 HB 4691.

[2] Michigan Department of Health & Human Services, *Estimated Number of Children Involved in Divorces and Annulments, Selected Years 1960–2023* <https://vitalstats.michigan.gov/osr/marriage/Tab3.6.asp> (accessed July 8, 2026) [https://perma.cc/92RF-SQWH].

[3] MCL 552.101(1).

[4] MCL 552.101(3)(a) through (c).

[5] MCL 552.102 and MCL 552.103.

3

also craft parenting-time[6] and child-support orders,[7] and these also can be changed over time.[8] Yet while a child-support order provides for healthcare coverage,[9] bodily injury coverage from automobile insurance is not required to be discussed or provided.[10]

---

[6] MCL 722.27a (provisions regarding parenting time); MCL 722.27(1)(b) (providing that, in a child custody dispute, parenting time of the child by parents is governed by MCL 722.27a).

[7] MCL 552.16(1) ("Upon annulling a marriage or entering a judgment of divorce or separate maintenance, the court may enter the orders it considers just and proper concerning the care, custody, and, as prescribed in [MCL 552.605], support of a minor child of the parties.").

[8] See, e.g., MCL 552.17(1) ("After entry of a judgment concerning annulment, divorce, or separate maintenance and on the petition of either parent, the court may revise and alter a judgment concerning the care, custody, maintenance, and support of some or all of the children, as the circumstances of the parents and the benefit of the children require.").

[9] MCL 552.605a(2) ("If a child support order is entered, the court shall require that 1 or both parents obtain or maintain health care coverage that is accessible to the child and is available to the parent at a reasonable cost, for the benefit of the minor children of the parties . . . ."); see also MCL 552.605a(1)(b) ("For a friend of the court case, a child support order entered or modified by the court shall provide that each party shall keep the office of the friend of the court informed of . . . [h]ealth care coverage that is available to [each party] . . . .").

[10] At oral argument, one of the appellees suggested that, under *Grange*, *both* parents in an equal parenting-time arrangement should have to separately carry insurance for their shared minor child, a suggestion that may not be anticipated or affordable for families.

Family courts are not tasked with making domicile determinations. The family court issues orders about legal and physical custody,[11] parenting time,[12] and child-support obligations.[13] When considering adjustments to parenting time and residency,[14] the court must determine the child's established custodial environment,[15] which, unlike domicile, can be established in more than one home.[16]

---

[11] See MCL 722.26a(7) (" '[J]oint custody' means an order of the court in which 1 or both of the following is specified: (a) That the child shall reside alternately for specific periods with each of the parents [and/or] (b) That the parents shall share decision-making authority as to the important decisions affecting the welfare of the child."). Although the Child Custody Act, MCL 722.21 *et seq*., distinguishes between physical custody and legal custody, caselaw has indicated since 2003 that "custody" logically refers to both physical custody and legal custody. See *Merecki v Merecki*, 336 Mich App 639, 647; 971 NW2d 659 (2021).

[12] See Support and Parenting Time Enforcement Act, MCL 552.601 to MCL 552.650.

[13] See MCL 552.16 (providing that a court, upon entering a judgment of divorce, may enter orders regarding care, custody, and support); see also, e.g., MCL 722.24(1) ("In all actions involving dispute of a minor child's custody, the court shall declare the child's inherent rights and establish the rights and duties as to the child's custody, support, and parenting time in accordance with [the Child Custody Act].").

[14] See also MCL 722.26a(5) ("If there is a dispute regarding residency, the court shall state the basis for a residency award on the record or in writing.").

[15] MCL 722.27(1)(c) ("The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered."); see also *id*. (stating that the "court shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child."); *Sabatine v Sabatine*, 513 Mich 276, 286; 15 NW3d 204 (2024); *Pierron v Pierron*, 486 Mich 81, 85-86; 782 NW2d 480 (2010).

[16] *Rittershaus v Rittershaus*, 273 Mich App 462, 471; 730 NW2d 262 (2007) ("It is true that a custodial environment can be established in more than one home."). The Court also noted this evident fact recently in *Sabatine*, 513 Mich at 286 ("Because it is not contested,

Many divorcing parents are not represented by counsel. One 2015 study estimated that 68% of divorces in Michigan involve at least one party undertaking self-representation, and 42% had no attorney involvement.[17] Many parents simply will not receive advice of counsel on how their judgment of divorce and custody and parenting-time orders will interact with their auto insurance policies.

All this to say that our family courts are not writing their orders with future no-fault implications in mind. Litigants in our family courts are focused on the many required aspects of a legal divorce, often without the guidance of counsel. Yet, as the case before the Court illustrates, choices made in the family court during or after a divorce involving minor children may have a significant impact years later in a completely different area of law. Today's decision, which provides a consistent determination regarding domicile across all cases, helps mitigate, but does not eliminate, that impact.

Kimberly A. Thomas

---

we assume, without deciding, that a child can have an established custodial environment with both parents.").

[17] Michigan Poverty Law Program, *Michigan Legal Help Evaluation Report* (January 2015), p 6 <https://mplp.org/sites/default/files/2020-02/michigan-legal-help-evaluation-report-1-15.pdf> (accessed July 8, 2026) [https://perma.cc/4JLH-5LA4].